WESTERN UNION TELEGRAPH COMPANY *v.* TOMS.

Opinion delivered April 27, 1911.

1.  TELEGRAPHS AND TELEPHONES—NOTICE OF SPECIAL DAMAGES.—Where the sender of a telegram verbally gave notice of a state of facts, as of death, from which the telegraph company might fairly infer that mental anguish would result to the sender or addressee from delay in its transmission, the company is liable therefor in case of negligent delay, and in such case special notice that the relationship of the parties was such that delay would cause mental anguish was unnecessary.    (Page 119.)

2.  SAME—MENTAL ANGUISH—INSTRUCTION.—In a suit against a telegraph company for negligence in delaying to transmit a message which would have apprised the addressee that the sender was coming to attend a sister's funeral, an instruction that "there can be no recovery because of mental anguish, caused by the death of his sister or their (his) failure to be present in the last hours" was properly modified by adding: "but only for mental anguish" to the sender and addressee for failure of the sender "to be present after death, between that and the funeral and at the funeral."    (Page 120.)

3.  SAME—MENTAL ANGUISH—LIABILITY.—Where a brother addressed a message to his sister apprising her that he would come to attend the funeral of another sister, the addressee is not entitled to recover damages for mental anguish on account of negligence in the transmission of such message, which resulted in the funeral being held before his arrival, where she does not testify that she suffered any mental anguish on account of the sender's absence or of her inability to hear from him.    (Page 120.)

Appealed from Crawford Circuit Court; *Jeptha H. Evans,* Judge; reversed as to Sanders; affirmed as to Toms.

*George H. Fearons, Mechem & Mechem,* and *Rose, Heming-way, Cantrell & Loughborough,* for appellant.

1. Appellee, Mary Sanders, is not entitled to recover for mental anguish; the failure of her brother to be present with her immediately before and during the funeral to extend comfort and sympathy was not one of those sorrows and griefs over the real ills of life that constitute mental anguish for which recovery may be had. 9 S. W. 598; 73 S. W. 1043; 58 S. W. 204; 41 S. W. 469; 99 S. W. 704; 100 S. W. 974, 976; 85 S. W. 1171; 32 N. E. 871; 10 La. Ann. 33; 83 Ark. 476; 82 Ark. 128; 90 Ark. 268; 92 Ark. 59; 96 Ark. 218.

2. The court's modification of the second instruction re-quested by appellant was erroneous in allowing an award of dam-ages for failure of appellee Toms to be present between the time of the death and the funeral—an element for which appellant was not responsible. 49 S. E. 952; 47 S. E. 745.

3. There is nothing in the message itself, nor in the remark of Toms, if made, that it was a death message, to put the com-pany upon notice of any relationship between the parties, nor of any special circumstances from which damage might arise.

*Jo Johnson,* for appellees.

McCULLOCH, C. J. The plaintiff, Charles Toms, and his sister, Mary Sanders, instituted this action in the circuit court of Crawford County against the Western Union Telegraph Com-pany, to recover damages sustained by reason of alleged negli-gence in nondelivery of a telegram sent from one to the other. The cases were consolidated and tried together, and the trial resulted in a verdict and judgment in favor of each of the plain-tiffs for the sum of $500 damages.

Toms resided on a farm a few miles from Clarendon, Monroe County, Arkansas, and Mary Sanders resided in the city of Fort Smith. Another sister, Lou Taylor, died April 11, 1909, in the city of Fort Smith, and about noon of that day Mary Sanders caused to be sent to her brother at Clarendon a telephone mes-sage notifying him of the death of their sister. The informa-tion was conveyed to Toms some time during the afternoon at his home in the country, and he at once came to town and repaired to the telegraph station and sent the following telegram, directed to his sister in Fort Smith:

"I will come as soon as I can get there."

[Signed]   "Charles Toms."

He testified that at the time he handed in the message he stated to the agent of the telegraph company that it was a death message. The message was filed about 6 o'clock in the afternoon, but was not delivered to the addressee until late the next afternoon, a few moments after Toms reached Fort Smith. He reached there a few minutes after the funeral was over and his sister had returned to her home.

It is conceded that the failure to deliver the telegram constituted negligence.

It is insisted, in the first place, that there was no notice to the company that mental anguish would result from the nondelivery of the telegram, and that for this reason there should be no recovery of damages. Plaintiff Toms testified that he told the agent that it was a death message, and this is the only statement or circumstance in the case from which notice to defendant company can be gathered. We are of the opinion, however, that this was sufficient. In *Western Union Telegraph Co.* v. *Moxley,* 80 Ark. 554, we said that "where the message upon its face gives notice of a state of facts, as of physical injury, illness or death, from which the company may fairly infer that mental anguish will result to the sender or addressee from delay in its transmission, then the company will be liable for negligent delay. Special notice that the relationship between the parties is such that delay will cause mental anguish is unnecessary." Again, in *Western Union Telegraph Company* v. *Shofner,* 87 Ark. 303, we said:

"The message on its face related to sickness and death, and was sufficient to charge the telegraph company with notice of damages which might result from negligence in handling it."

In other cases we have held that the notice may be given by oral statements to the sending operator. *Western Union Tel. Co.* v. *Raines,* 78 Ark. 545; *Western Union Tel. Co.* v. *Griffin,* 92 Ark. 219.

We think, therefore, that, under the facts of this case, defendant company was bound to take notice of any damage, by way of mental anguish, which would result to the sender of the message by reason of the nondelivery of the telegram.

Defendant requested the court to give the following instruction: "There can be no recovery because of mental anguish caused by the death of his sister or their failure to be present in the last hours." The court, over defendant's objection, modified this instruction by adding the following: "But only for mental anguish to Toms and Mary Sanders for failure of Toms to be present after death, between that and the funeral and at the funeral."

The ruling of the court in modifying the instruction is assigned as error. It is contended that the modified instruction was misleading, in that the jury might have understood it to mean that they could consider mental anguish for failure of Toms to be present from the time of the death of his sister until after the funeral. Let us consider this instruction with reference to the case of Toms. The facts were undisputed that he was not present in the city of Fort Smith when his sister died, but that he resided at Clarendon, Arkansas, and did not reach Fort Smith until immediately after the funeral. The jury could not possibly have understood from this instruction that the court meant to say that, in determining the amount of his damages from mental anguish, they should consider the period of time before he could have reached Fort Smith. Reading it in the light of other instructions, it could only have been understood to mean that they should consider the mental anguish suffered by him by reason of his failure to be in Fort Smith and at the bedside of his dead sister and also with his living sister before the funeral and at the funeral. To that extent the instruction was correct and was not misleading. The evidence tended to show that if this telegram had been received in Fort Smith, announcing his purpose to go to that place as speedily as he could, the funeral would have been postponed to await his presence. It was proper, therefore, for the jury to consider the mental anguish which he sustained by being deprived of the opportunity to reach there before the funeral, so as to view the remains and attend the funeral. We conclude that as to Toms the instruction could not have been misunderstood, and that it was not prejudicial.

We are unable to see that the damages assessed by the jury are excessive, and the judgment in favor of Toms will therefore be affirmed.

We conclude, however, after a careful examination of the testimony in the case, that there is no evidence to sustain a recovery by Mary Sanders. The evidence does not establish a state of facts which warranted the jury in finding that any mental anguish was caused by the nondelivery of the telegram. She had not talked with her brother over the telephone, and did not know, until his arrival in Fort Smith, that the message to him had been delivered. She does not testify that she suffered any anguish on account of his absence or on account of her inability to hear from him. The only testimony in the record which can be said to bear, even remotely, on the question of her mental suffering is that of her brother, Toms, who stated that when he arrived at Fort Smith he found his sister, Mary Sanders, weeping and in grief on account of the death of their sister and his failure and that of his mother to attend the funeral. He was then with her, which was immediately after the funeral, to minister such consolation as he could in her grief-stricken condition. The failure to deliver the telegram had nothing to do with the time of his arrival in Fort Smith, and it only affected the question of postponement of the funeral. It was not possible for him to have been with his sister at an earlier moment, and, so far as the evidence in this case stands, there is nothing whatever to show that she suffered any by reason of the failure to receive the message. Whatever suffering she had to undergo was necessarily on account of the death of her sister, and, may be, the absence of her brother and mother.

The judgment in favor of Mary Sanders is therefore reversed and the action dismissed.

HART, J., dissents on ground that judgments in both cases should be reversed and remanded for new trial on account of erroneous modification of instruction.