## DIXON v. McCANN.

No. 10607—Opinion Filed March 21, 1922.

Rehearing Denied May 2, 1922.

Application to File Second Petition for Rehearing Denied Sept. 26, 1922.

(Syllabus.)

**1. Oil and Gas—Abandonment of Lease—Failure to Drill.**

Where an oil and gas lease for six years, and as much longer as oil and gas may be found in paying quantities, contains an express covenant to complete a well within two years, and without provision to pay for delay, failure of lessee to comply with such express covenant amounts to abandonment, and renders the lease forfeitable at the option of the lessor or his grantee.

**2. Evidence—Evidence Modifying Oil Lease—Lack of Plea for Reformation.**

It is not error to refuse the introduction of evidence, offered to change or modify the terms of an oil and gas lease when there is no plea asking to have said lease reformed.

**3. Oil and Gas—Right of Lessor to Release of Lease Upon Forfeiture—Statute.**

Section 1 of chapter 248, Session Laws 1915, makes it the duty of the lessee of oil and gas lease, when the lease becomes forfeited. to execute a release and release the oil and gas lease from record.

**4. Damages—Statutory Provision.**

Section 2845, Rev. Laws 1910. provides: "Any person who suffers detriment from the unlawful act or omission of another. may recover from the person in fault a compensation therefor in money, which is called damages."

**5. Oil and Gas—Failure of Lessee to Release Abandoned Lease—Defenses.**

Where a landlord demands of the lessee of an oil and gas lease a release of a lease that

has been abandoned, and is subject to forfeiture at the option of the lessor or his grantee, the lessee is not bound at his peril to determine disputed or doubtful questions as to the validity of the lease, but if the refusal is made in good faith and in the honest belief that his lease is valid, he may plead this as a defense, but it is no defense if his refusal results from inadvertence, inattention, or indifference.

### 6. Same—Action by Lessor for Damages—Defensive Pleading.

In an action by the landowner for damages for the failure of the lessee of an oil and gas lease to release an oil and gas lease from record, the defense tending to excuse or justify the lessee for his refusal to execute the same must be specially pleaded, and cannot be introduced under a general denial.

### 7. Same—Instructions—Malicious Intent.

In an action by a landowner against the lessee for damages for failure or refusal to execute a release of an oil and gas lease, it is not error to refuse a requested instruction to the effect that before the plaintiff can recover he must prove that the action by the defendant was willful and malicious, and that he intended thereby to injure the plaintiff.

### 8. Same—Sufficiency of Instructions.

The instructions examined, and held not subject to criticism offered by plaintiff in error.

Error from District Court; Seminole County; J. W. Bolen, Judge.

Action by O. J. McCann against J. L. Dixon to quiet title and for damages. Judgment for plaintiff, and defendant brings error. Affirmed.

Willmott & Roberts, for plaintiff in error.

Busby & Harrell, for defendant in error.

McNEILL, J. This action was commenced in the district court of Seminole county by O. J. McCann against J. L. Dixon to quiet title to certain lands and for damages. The petition alleges that McCann is the owner of the 56 acres of land, and the defendant Dixon claimed some interest in said land by virtue of an oil lease, a copy of which is attached to the petition. It is alleged that said oil lease is void and of no force and effect, and the same constitutes a cloud upon the title of plaintiff. The petition further alleges that plaintiff had often requested the defendant to release said lease, and defendant refused to do so, and that about the 1st of February, 1917, the plaintiff had a purchaser for an oil and gas lease on said premises for $10 per acre, or the sum of $565.60, and the purchaser was ready and willing to pay the price, but refused to accept the lease on account of the oil and gas

lease of the defendant that was recorded and not released. Plaintiff asks for damages in the sum of $565. To this petition defendant filed an answer which consisted of a general denial, and claimed an interest in the land by virtue of an oil and gas lease executed the 24th day of March, 1913, and specially denied that plaintiff had been damaged by refusal to release the lease.

The evidence disclosed that this land was originally owned by July and Betty Sancho, and on March 24, 1913, they executed a lease to Dixon for a recited consideration of one dollar; the lease being for a period of six years, or as much longer as oil and gas were produced from the premises. The lease provided for commencing a well within two years, or paying — dollars for each additional year such completion was delayed. That on the 10th day of December, 1913, the Sanchos deeded the land to H. A. Dolan. Thereafter, another deed was executed by the Sanchos to Dolan on the 2nd day of July, 1915. On the 4th day of January, 1917, Dolan and wife conveyed the land to McCann. That on the 17th day of January, 1917, McCann executed an oil and gas lease on the land to Selby Oil & Gas Company for a consideration of $565.60. This lease was deposited with a certified check, and the check was to be delivered to McCann upon approval of the abstract by Selby Oil & Gas Company.

McCann testified, in substance, that after he bought the land he met Dixon and informed him that he had bought the land and his lease did not call for any rentals, and provided for a well to be drilled in two years and this had not been done, and that he had paid no rentals and the lease was void, and he wanted to sell another lease on the premises and he wanted a release; that Dixon replied he was paying rentals on it, that he did not know how much, but he thought $15 or $20 a year. The evidence also discloses that the Selby Oil & Gas Company refused to accept the lease from McCann because the Dixon lease had not been released and was a cloud upon the title. Shortly thereafter this suit was instituted. McCann testified that after the commencement of the suit he had a conversation with Dixon regarding the lease and the validity thereof, and Dixon remarked that he did not know how he happened to make a mistake by writing it in blank, and if he had just put in any consideration, he thought he could hold the lease; that he offered to execute a release for $75. Dixon was produced as a witness on behalf of defendant, and admitted he had never drilled

nor paid Dolan or McCann any rental. Thereafter the witness Dixon testified in his own behalf and admitted McCann spoke to him about the release, and he wanted to get a release, and that he told McCann he did not remember about the lease, but he would look it up and see. He admitted that after the suit was commenced he talked to McCann and offered to release for $75. On cross-examination he admitted that McCann had demanded the release and that he did not release it; and he was then asked if he ever intended to release it, and he replied yes, he intended to release it, but he wanted to look it up first. That thereafter he had stated he would release if he got $75. He was asked if there was any malice or any reason for him not releasing it, and he said no, he aimed to look it up and forgot it.

The cause was submitted to the jury, and a verdict returned in favor of the plaintiff and against the defendant for $500. Defendant filed a motion for new trial, which was overruled, and the case is now here on appeal.

For reversal, plaintiff in error contends, first, that the lease at the time the release was demanded was a valid and existing lease. The lease in the instant case contains a provision almost identical with the lease involved in the case of New State Oil & Gas Co. v. Dunn, 75 Okla. 141, 182 Pac. 514. This court held in that case the failure to drill a well within the two years was a breach of the conditions and amounted to an abandonment, and the lessor was entitled to have the lease forfeited. Under this assignment, plaintiff in error also contends that the court erred in rejecting certain evidence. During the trial of the case the defendant offered to prove that a mistake was made in drafting the lease, and it was intended to insert therein that if the well was not commenced within two years the lessee would pay $5 per year, and that he had an oral agreement to that effect. This evidence was rejected by the court, and we think correctly so. There was no plea asking to reform the lease, nor plea of a mutual mistake in drafting the lease. We think there was no error for the further reason, if it contained such a provision, Dolan was the owner of the land for at least two years prior to filing suit and Dixon admitted he had paid no rental to Dolan or Dixon; so, if it contained such a provision, he was in default and never tendered any rental at the trial.

It is next contended that the plaintiff's petition did not state a cause of action. It is sufficient to say that the sufficiency of the petition was not raised by demurrer, nor by objection to the introduction of testimony. We think the petition states a cause of action.

The next question presented is the refusal to give instruction No. 3 requested by the defendant. This instruction was, in substance, that, before the jury could find for the plaintiff, they must find the plaintiff demanded a release of the defendant. We think this question was covered by the statement of the case and instruction No. 3 given by the court. The refusal to give such an instruction would be immaterial, because plaintiff testified that he had demanded a release and defendant admitted a release was demanded, so this question of fact was admitted by both sides.

The next assignment of error is that the court refused to give instruction No. 4 requested by the defendant. This instruction was, in substance, that the defendant would not be liable for damages to plaintiff for failure to release the oil and gas lease from record unless the jury found from a preponderance of the evidence that the defendant willfully and with intent to injure the plaintiff refused to release said lease. We do not think this requested instruction correctly states the law. Chapter 248 of the Session Laws of 1915 makes it the duty of a lessee, when the lease becomes forfeited, to execute a release and have such lease released from the records.

Section 2845, Rev. Laws 1910, provides:

"Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

The question of malicious intent is not an essential element in a case of this kind for damages under a statute of this kind, which imposes a duty to execute a release. It no doubt would be if it were intended to punish one for the wrong or to recover exemplary damages, but not when seeking to recover actual damages suffered. The reason for the statute is apparent, for the reason that an oil and gas lease that is unreleased is a cloud upon the title. We think the reason is very similar to cases regarding releases of mortgages upon real estate. Numerous states, together with our own, have a statute providing for penalties for failure to release. The rule is stated in 27 Cyc. 1428, as follows:

"On tender of payment to a mortgagee, he is not bound at his peril to determine disput-

ed or doubtful questions, and he is not liable to the statutory penalty if his refusal is made in good faith and in the honest belief that he is not bound to accept it. But, on the other hand, his unjustifiable refusal to satisfy the mortgage exposes him to the penalty, although not willful or oppressive, if resulting from mere inadvertence, inattention, or indifference."

This same principle is applicable to release of oil and gas leases. The lessee is not bound at his peril to determine disputed or doubtful questions, but if he acts in good faith and honestly believes that his lease is valid and enforceable, he may not be subject to damages, although it is unnecessary to decide this question. In 27 Cyc. 1428, it is said:

"Matters tending to excuse or justify the mortgagee's refusal must be specially pleaded, and cannot be given under the general issue."

See Wm. Deering Co. v. Miller (Neb.) 50 N. W. 1056; Mickie v. McGehee, 27 Tex. 134; Chinn v. Wagoner, 26 Mo. App. 678. The plaintiff in error did not plead his excuse or justification, although he did plead that the lease is in force and effect. His proof was that there was a mistake in the lease, and that he was to pay $5 a year after the second year; still he does not attempt to say that he ever tendered this $5. He does not testify upon what theory he claimed his lease was in full force and effect. He was demanding $75 for a release. Our statute was passed to remedy just this evil. It was to prevent a lessee who has recorded an oil and gas lease, and although it has expired, been abandoned, or is subject to forfeiture, still if not released is a cloud upon the landlord's title, from using this as a weapon to extort from the landowner money, and using this cloud on his title as an instrument to prevent the landowner from executing a new lease. The peculiar condition surrounding the oil business is such that a lease today may be worth thousands of dollars, while in 30 days it may be almost worthless. The failure to release would permit the holder of a forfeited lease or one that has expired to demand of the landowner pay for doing what is his duty to do, and upon failure of the landowner to pay, he could prevent the landowner from leasing to any one else. While the landowner may sue to quiet his title, the lease, when the title is quieted, may have no value.

It is next contended that the court erred in refusing to peremptorily instruct a verdict for defendant; it being contended that the evidence was insufficient to prove damages.

An examination of the evidence discloses that there was no error in refusing to give this instruction. The evidence is amply sufficient to prove the damages. It is contended the instructions given did not properly define the measure of damages, but, under the rule in this state, where a party has sustained damages, and there is no plea that the damages are excessive, when the proper measure of damages is applied, this court will not reverse the case simply because of misdirection of the jury as to the measure of damages. The damages are not excessive, and are fully supported by the evidence. The only other complaint regarding the instructions is that the court failed to instruct the jury that the failure to release would not make the defendant liable unless his failure was the result of malice. We think there was no merit in this contention, and this theory of the case has been discussed heretofore.

For the reasons stated, the judgment of the court is affirmed.

PITCHFORD, V. C. J., and JOHNSON, ELTING, and NICHOLSON, JJ., concur.