Note.—See under (1) 9 C. J. p. 1255, §195; 13 C. J. p. 778, §979; 18 C. J. p. 448, §554 (Anno); 12 R. C. L. p. 438: 2 R. C. L. Supp. p. 1428; 5 R. C. L. Supp. p. 644; 6 R. C. L. Supp. p. 708. (2) 4 C. J. p. 876, §2853; p. 884; §2855; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 432; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 80; 6 R. C. L. Supp. p. 73. (3) 9 C. J. p. 1175, §35; 41 C. J. p. 385, §199. (4) 4 C. J. p. 913, §2881; p. 914, §2882; p. 969 §2952; p. 1004, §2986.

---

## WESTERN UNION TEL. CO. v. SLIFE.

No. 17559—Opinion Filed Nov. 30, 1926.

**1. Appeal and Error—Sufficiency of Evidence—Conclusiveness of Findings.**

If there is any evidence, including reasonable inference, tending to support the findings of the court where a jury is waived, the Supreme Court will not reverse the cause for insufficient evidence.

**2. Telegraphs and Telephones—Negligence in Handling Telegraph Message—Mental Suffering as Sole Element of Damage —Statute.**

Section 4951, C. S. 1921, does not contemplate that the liability of the telegraph company for damages for mental anguish or suffering for negligence in receiving, transmitting, or delivering messages shall depend upon the relationship of persons injured thereby, but such damages are recoverable by any person so injured, even in the absence of bodi y injury or pecuniary loss.

**3. Same—Face of Message as Notice of Mental Suffering to Result from Delay.**

Where the message upon its face gives notice of a state of facts, as of physical injury, illness, or death, from which the company may fairly infer that mental anguish will result to the sender or addressee from delay in its transmission, then the company will be liable for negligent delay. Special notice that the relationship between the parties is such that delay will cause mental anguish is unnecessary.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by Birdie Slife against the Western Union Telegraph Company. From a judgment in favor of the plaintiff, defendant brings error. Affirmed.

Keaton, Wells & Johnston and Francis R. Stark, for plaintiff in error.

King & Delaney and W. A. Delaney, for defendant in error.

Opinion by PINKHAM, C. This action was instituted by the defendant in error as plaintiff, against the Western Union Telegraph Company for damages on account of the nondelivery of a message sent from Ryan, Okla., to the plaintiff, Birdie Slife, at Ada, Okla., reading as follows:

"Alma Davis died 10 o'clock this morning. [Signed] A'f Durrett."

The petition alleges the delivery of this message to the Western Union Telegraph Company at Ryan at 6:15 p. m. on September 21, 1925. the payment of tolls and the promise of defendant company to transmit said message; that Alma Davis, named in the message, was a favorite niece who died at Afton, Tex., and that if this message had been transmitted and delivered with dispatch and diligence, plaintiff would have departed from Ada. Okla., for Afton, Tex., and attended the funeral; that plaintiff had been a teacher in the public schools of Ada and was well known there: that the defendant company negligently transmitted said message as addressed to Birdie Flife instead of Bird e Slife. Wherefore, the plaintiff prays damages for mental anguish in the sum of $2.995.

Defendant's answer consisted of a general denial, an admission that the defendant company received the message, but that it was received and understood over the telephone as addressed to Birdie Flife; that the receiv-

ing operator became and was the agent of the sender for the purpose of receiving and transmitting said message and so understood and transcribed the same and repeated the same by telephone to the said Alf Durrett and received and understood the confirmation thereof and the operator so understood the message as addressed to Birdie Flife at Ada, Okla., and transmitted said message to destination as so addressed, and the same was so received at destination, and all reasonable efforts were thereupon and promptly made to locate the said Birdie Flife and a service message reporting such efforts and failure was promptly returned to the sending office at Ryan, Okla.

Defendant further alleges that the delay and failure in the delivery of said message was due to the fault and failure and contributory negligence of the sender, Alf Durrett, acting as the duly authorized agent of the plaintiff, to deliver to the defendant company the true and correct name of the addressee, and by failure of the said Alf Durrett to give the defendant company a particular and correct street address in the town of Ada at which said message could be delivered.

For a further defense defendant alleges that said message was an unrepeated message and no order or requirement was made to have the same repeated, but the same was sent as an ordinary and regular unrepeated message.

Defendant further alleges that if said message had been repeated and rechecked as required by the terms and conditions in said message contract, the said error in receipt and understanding of the sendee's name would have been disclosed.

The defendant admits in its answer that the plaintiff is entitled to the recovery of a nominal damage in the sum of $1 and interest, and tenders said amount, together with costs and interest accrued.

Both parties waived the right to trial by jury and proceeded to trial before the court, and at the close of all the evidence the court made findings of fact to the effect that the agent of the defendant company at Ryan did not correctly understand the name of the sender as given to him over the telephone and that the message was sent to Ada addressed to Birdie Flife instead of Birdie Slife, plaintiff herein.

The court further found, however, that if certain information subsequently given to the defendant company at Ada "had been followed up, the identical party could have been ascertained."

Defendant excepted to the court's findings of fact and presented a list of specific findings of fact and of law, which the court refused to give.

The court concluded as a matter of law from the facts found that the defendant was at fault and liable to the plaintiff for negligence in failing to deliver the message.

Defendant's motion for a new trial was overruled, exceptions reserved, and judgment was rendered by the court in favor of the plaintiff awarding her damages in the sum of $500.

Defendant has duly appealed to this court by petition in error and case-made. attached.

For reversal of the judgment, the first assignment of error presented and discussed is: "Error in charging the defendant company with liability, where the proof shows without contest that the defendant's agent sent the message exactly as received and repeated over the telephone."

Numerous authorities are cited to the effect that before a party can recover for a mistake in a telegram, he must show that the agent who received the message understood the message or was negligent in failing to understand it; that there is no presumption that people speaking over the phone understand each other; and that there is no presumption that the defendant's agent understood it or was negligent in failing to understand it. Western Union Telegraph Company v. Gault (Ky.) 90 S. W. 610; Painter v. Western Union Telegraph Company (S. C.) 84 S. E. 293; Cameron v. Western Union Telegraph Company (S. C.) 74 S. E. 929.

Further authorities are cited wherein it is held that the operator, in writing down a message at the request of the sender, acts as the agent of the sender, and the sender and not the company is liable in case of error in such transcribing of the message. Western Union Telegraph Company v. Holcomb (Tex. Civ. App.) 152 S. W. 190; Western Union Telegraph Company v. Holcomb (Tex. Com. App.) 210 S. W. 509; Western Union Telegraph Company v. Prevatt (Ala.) 43 South. 106; Lavelle v. Western Union Telegraph Company (Ark.) 145 S. W. 205; Keeting v. Western Union Telegraph Company (Mo. App.) 152 S. W. 95.

On trial of the cause Mrs. Robert Mitchell testified that she lived about ten miles from Ryan, Okla., and had known Alf Durrett for approximately 16 years; that on or about the 21st day of September, 1925, Alf Durrett, who signed the message and who, it

appears, was a nephew of plaintiff, called at her home and that she talked for him over the telephone to the defendant company at Ryan for the purpose of transmitting to the company the message in question. Mrs. Mitchell testified that she clearly gave the name and address of Birdie Slife and that she spelled out the name in full and that after she had communicated the message the operator at Ryan repeated back the name of the person to whom the message was addressed, and that he clearly spelled the name back to her. She further testified that at about eight o'clock or nine o'clock that evening the operator called back to ascertain if a better address could be given and that she informed the operator that Miss Slife was formerly a school teacher and was well known in Ada; that she did not hear any more about the message until the next day, when she was informed that the company could not locate Miss Slife, and she then testified that she told the operator to try and get Henry Durrett, that he was going to school at Ada and was boarding with Miss Slife in Ada; and that she heard nothing further from the message.

The record shows that in response to questions by the court Mrs. Mitchell testified that the operator spelled the name of the addressee back to her and that she clearly understood how he spelled it; that this conversation with the operator occurred not later than ten o'clock on the morning of the 22nd of September, 1925.

The telegraph operator at Ryan testified on behalf of the defendant that on September 21, 1925, Mrs. Mitchell telephoned him from the country over the rural community telephone line and requested him to send a message to Birdie Flife; that he repeated that message word for word to the sender and that he read it back to Mrs. Mitchell, Birdie Flife, and that Mrs. Mitchell made no corrections; that he sent the message to Ada by way of Oklahoma City within a short time after he received it; that the next thing that he heard about this message was when the company's agent at Ada called him for a better address. The agent at Ryan then testified that he called Mr. Durrett on the telephone, but was unable to get him and was unable to communicate further with Mrs. Mitchell, who had sent the message to him.

It is reasonably clear that on account of the similarity of the sound of the names "Flife" and "Slife" there was a misunderstanding between the sender, Mrs. Mitchell, and the operator at Ryan, who received it over a rural telephone, and in such a situation the rule announced in the authorities cited by defendant would doubtless be controlling in this case except for the fact that there appears in the record testimony to the effect that information was given to the company's agent at Ada which, if acted upon, would have readily shown where Miss Slife could have been found.

The plaintiff, it appears, had resided in the city of Ada, Okla., at 531 W. 13th St., for approximately seven years, and that her home was less than one mile from the office of the Western Union Telegraph Company: that she had taught school in the city of Ada and that for some time she had been keeping boarders; that she had frequently received messages delivered to her over the telephone from the defendant company's office at Ada for one of her boarders, one S. P. Smith; that during Mr. Smith's last illness a great many messages were delivered to him in her care and that she had identified herself over the telephone by saying that it was Birdie Slife talking over the telephone; that messenger boys from the company's office came to her home to deliver messages for Mr. Smith addressed in her care and that she signed for them in her own name.

The witness T. W. Rowzee testified that he was the general delivery clerk at the post office at Ada, Okla., and had been such clerk for about three years; that on or about the 21st day of September, 1925, a representative of the defendant company came to him and requested the street address of the plaintiff and that he gave it to him at that time.

On behalf of the defendant company the messenger boy who went to the post office at Ada testified that he took the message in question to the post office on the 22nd day of September, 1925, at about 8:30 o'clock, and made inquiry at the general delivery window "and they did not know where she lived."

Conceding that the message in question was received at the company's office at Ada addressed to Birdie Flife, and that the operator so understood the name when it was telephoned to him, still there is sufficient evidence appearing in the record to support the court's finding of fact that if the information given by Mrs. Mitchell on the 22nd day of September, 1925, and the information given by Mr. Rowzee, the post office clerk at Ada, on the same day, had been followed up and acted upon, the identity of the sendee could have been ascertained and the plaintiff could have gone to Af-

ton, Tex., in ample time to have attended the funeral of her niece.

It is true there is a conflict in the evidence given by the post office clerk, Rowzee, and the messenger boy of the defendant company as to what was said with respect to the plaintiff's residence; but the court, who heard these witnesses, was of the opinion that one of the defendant's delivery boys ascertained from the post office at Ada that there was a Birdie Slife residing at a certain numbered house in the city of Ada and that no effort was made by the company to discover whether this was the identical person or not.

Many decisions of this court have announced the rule that where the findings and judgment of the court are not clearly against the weight of the evidence, the judgment will not be disturbed on appeal. Planters Cotton & Ginning Co. et al. v. Blackburn, 92 Okla. 15, 217 Pac. 395, and cases therein cited.

It is next contended that the court erred in making finding No. 4, which reads as follows:

"The court further finds that also on the morning of the 22nd one of the delivery boys an agent of the defendant ascertained from the post office that there was a Birdie Slife at a certain number in Ada and that no effort was made by the defendant to see if this was the identical party intended."

We are unable to agree with defendant's contention that the court erred in the finding referred to. It is pointed out that after Mr. Rowzee, the post office clerk, had testified that on or about the 21st day of September, 1925, a representative of the company called on him and requested the street address of Birdie Slife and he furnished this information by giving the number of the plaintiff's address, the witness was asked if he remembered the date, to which he answered that it was "along in the fall or late summer." Counsel for defendant say in their brief:

"The question of the location of Birdie Slife did become a matter of investigation about a week after this message was sent, when letters advised of the death of Alma Davis and inquiry was made."

The inference to be drawn from this statement is that the post office clerk gave the plaintiff's address to the company's messenger boy a week after the message was sent, but the messenger boy's testimony was that it was on the early morning of the 22nd day of September, the day after the message was sent, that he made inquiry respecting the residence of Birdie Slife.

The remaining assignments relate to error of the court in refusing to make findings of fact requested by the defendant.

The first finding offered and refused is as follows:

"I find that there is not any proof in this case that the defendant company had notice of the particular relations of love and affection existing between the sendee of said message and the deceased and was not apprised of any close relationship."

It is argued that this message cannot be said to give notice of any special condition of friendship or relationship existing between Alma Davis and the proposed sendee, Birdie Slife; that there is not a line or word in this message to suggest that relationship between these parties, nor in fact is there any word which suggests that the sendee, Birdie Slife, shall attend the funeral of Alma Davis in Texas.

The precise question raised under this assignment of error was presented to this court in the case of Western Union Telegraph Company v. Hankins, 104 Okla. 111, 230 Pac. 857, in which case it is held in the third paragraph of the syllabus:

"Section 4951, C. S. 1921, does not contemplate that the liability of the telegraph company for damages for mental anguish or suffering for negligence in receiving, transmitting, or delivering messages shall depend upon the relationship of persons injured thereby, but such damages are recoverable by any person so injured, even in the absence of bodily injury or pecuniary loss."

In the case of Sedden v. Western Union Telegraph Company, 126 N. W. 969, the Supreme Court of Iowa in the sixth paragraph of the syllabus uses the following language:

"Relationship between the addressee of the death message and the decedent need not appear on the face of the message in order to make the telegraph company liable for the addressee's mental suffering caused by negligent delay in delivery."

The courts generally hold that if the message is a death message, it is sufficient to put the telegraph company upon notice of its importance. Western Union Telegraph Company v. Shofner (Ark.) 112 S. W. 751; Western Union Telegraph Company v. Toms (Ark.) 137 S. W. 559; Western Union Telegraph Company v. Garlington, 101 Ark. 487, 142 S. W. 854, 49 L. R. A. (N. S.) 300; Western Union Telegraph Company v. Tweed (Tex. Civ. App.) 138 S. W. 1155; Western Union Telegraph Company v. Lawson (Kan.) 72 Pac. 283.

In Western Union Telegraph Company v. Moxley, 80 Ark. 554, 98 S. W. 112, it is said that:

"Where the message upon its face gives notice of a state of facts, as of physical injury, illness, or death, from which the company may fairly infer that mental anguish will result to the sender·or addressee from delay in its transmission or delivery, then the company will be liable for negligent delay. ·Special notice that the relationship between the parties is such that delay will cause mental anguish is unnecessary."

It is clear that the Legislature in enacting our mental anguish statute, section 4951, supra, made it broad enough to cover anyone who was injured thereby, and it is therefore immaterial in what degree the party named as sendee of the telegram is related to the deceased, or whether the sendee of the telegram is related at all to the deceased. If they were injured by the failure of the defendant company to deliver the death message, they can recover such damages as they have sustained.

It is further contended that the court erred in refusing to make a number of other findings offered by defendant. These offered findings are to the effect that there was no competent or sufficient proof to show that if the said message had been delivered in regular course the plaintiff could and would have actually reached Afton, Tex., in time to attend the funeral, or that the train service was actually available to her and that she was in position to have actually made a trip from Ada, Okla., to Afton, Tex., in time to attend the funeral.

From a careful examination of the evidence disclosed by the record, we think the court did not err in refusing the offered findings. There was evidence undisputed that the funeral of plaintiff's niece was delayed two days in order that the plaintiff might be present, and there is evidence also without conflict that the plaintiff would have attended the funeral, if she had received the message within any reasonable time after it had been sent to the operator at Ada; that the plaintiff, Birdie Slife, suffered mental anguish is unchallenged in the record.

We are clearly of the opinion, from a careful examination of the evidence, that if the defendant company had exercised that degree of care required by the law, the message in question could have been readily delivered in ample time for the plaintiff to have attended the funeral of her niece, and that defendant's failure to act upon information furnished it as to the residence of the plaintiff constitutes such negligence as would render it liable.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.