## WILSON v. SHASTA OIL CO.

No. 23477. April 9, 1935.

J. P. Speer, for plaintiff in error.

Sandlin & Winans, for defendant in error.

PER CURIAM. This is an appeal by Lillie L. Wilson from a judgment of the district court of Stephens county, holding her not entitled to be paid $1,200 held by the First National Bank of Comanche under an escrow agreement. For purposes of convenience the Shasta Oil Company will be referred to as plaintiff and Lillie L. Wilson, the plaintiff in error, as the defendant. While the judgment of the trial court was in favor of the Shasta Oil Company, and against not only Lillie L. Wilson, but a number of her codefendants, no one appeals other than Lillie L. Wilson.

On May 23, 1930, Lillie L. Wilson executed in favor of J. E. Perkins an oil and gas lease covering 80 acres of land in Ste-

phens county, which she claimed to own. At the same time, she, with others, including R. A. Hillery and G. I. Warner, executed in favor of the same lessee a lease covering another 100-acre tract, which they claimed to own as heirs of John D. Wilson. On May 24th J. E. Perkins deposited in the First National Bank of Comanche, $1,950, and Hillery and Warner, as agents for the lessors of both leases, deposited with the bank the two leases, all under the following agreement:

"J. P. Speer
"Lawyer
"Comanche, Oklahoma.
"May 24th, 1930.
"First National Bank,
"Comanche, Oklahoma.
"Gentlemen:

"Attached hereto find two oil and gas leases, one covering 100 acres in Sec. 20, the other 80 acres in Sec. 29., Twp. 2 S., R. 7 W.

"Lessors are to furnish abstract of title for examination by attorney for lessee, who has five days after receipt of abstract to examine title, lessor to have ten days after being furnished with list of requirements to cure defects in title. Lessors agree to furnish and lessees agree to accept good merchantable title.

"Lessee is depositing with said leases the sum of $1,200, against Lillie L. Wilson lease, and $750 against Wilson estate lease. Leases to be kept by you until title approved or expiration of time, and to be delivered to J. E. Perkins, or order, on payment of said sums of money. Failing furnishing of good merchantable title leases to be returned to lessors and money to lessee or order. Abstracts to be delivered in 10 days from date.

"R. A. Hillery
"G. I. Warner
"Agents for Lessors
"J. E. Perkins
"Lessee"

On the same date, Perkins, in writing, assigned all his rights to the leases or money in escrow to the Shasta Oil Company, and gave the bank written notice of the assignment.

On June 4, 1930, lessors furnished abstracts of title, and on June 9, 1930, attorneys for plaintiff wrote opinions on the titles as disclosed by the abstracts furnished, and delivered copies of same to the lessors. They made certain criticisms as to the title of the Wilson heirs to the 100-acre tract, which were admittedly valid and sound objections, and no effort was made to overcome or remedy same. Since neither the validity of the title to this tract nor the right of the

Shasta Oil Company to be paid the $750 purchase price therefor is in controversy here, no further discussion of that title is here necessary. As to the Lillie L. Wilson lease covering the 80-acre tract, the following objection and requirement was made:

"Page 6 of the abstract of title bearing certificate #9766 shows an oil and gas lease dated June 5th, 1918, given by Lillie L. Wilson to Chas. W. Taylor, covering the SW¼ of NW¼ of NW¼ of said Section, and other land. This lease provides for a term of five years from its date with usual conditions. (C.-M. 62.) Mid-Kansas Oil & Gas Company, a corporation, is the record owner of this lease as it covers ten acres. We require a release of said oil and gas lease as it covers this particular ten acres."

On the same day examining counsel wrote the Mid-Kansas Oil & Gas Company at Tulsa, Okla., requesting a release of the lease referred to in the criticism, and stating:

"We understand there is no oil or gas being produced from these lands, that the lease has expired, and we would be pleased to have you send us by return mail proper release."

In the court's findings of fact hereinafter referred to is one to the effect that within ten days after the title opinion was written, defendant tendered to plaintiff what is familiarly known as a "nondevelopment affidavit", executed by R. A. Hillery, one of the defendant's agents, but it was refused by the examining attorney as not meeting the requirement of a release of the lease.

Ten days having expired from the date of the opinions, and the requirements not having been met, plaintiff notified the bank that it would not accept the leases, and made demand for the payment to it of the $1,950 held in escrow. Payment having been refused, it brought this action against both the bank and the lessors, asking judgment for $1,950.

The bank filed its answer in the nature of a bill of interpleader, and obtained leave to pay the $1,950 into court. The lessor defendants answered, Lillie L. Wilson by cross-petition asking that $1,200 of the fund be paid to her, alleging that the title to the 80-acre tract shown by the abstract, together with the tendered "affidavit of nondevelopment," disclosed a clear, merchantable title in her at the time of the execution of her lease.

Upon trial, a jury was impaneled, but after the evidence was introduced, the court discharged the jury, and without request therefor, made certain specific findings of

fact, those material to this appeal being, in substance:

(1) That the contract between plaintiff and defendant as to the 80-acre tract claimed by defendant, was separate from the contract as to the 100-acre tract.

(2) That the title of defendant to the 80-acre tract as shown by the abstract furnished plaintiff's attorneys was not good and marketable, and defendant did not within ten days after being furnished with a list of requirements exhibit to plaintiff evidence showing same to be good and marketable.

(3) That the efforts of plaintiff's examining attorney to secure a release of the oil and gas lease was for the benefit of the defendant.

Based on these findings, judgment was for the plaintiff for the payment to it of the money deposited with the court clerk. The findings of the court also included a finding to the effect that the abstract covering the 100-acre tract failed to disclose a merchantable title thereto, and hence the judgment also covered the $750 applicable thereto. No appeal is taken therefrom, and that phase of the case may be largely disregarded.

After the overruling of a motion for a new trial, defendant Lillie L. Wilson prosecutes this appeal. The error complained of is set forth in her fourth assignment as follows:

"That the trial court erred in holding the title of this plaintiff in error, then defendant, not good and merchantable, as to the north half of northwest quarter of sec. 29, T. 2 S., R. 7 W., when it was stipulated that such title was valid and perfect, except that there was an unreleased oil and gas lease covering ten acres of such land, which lease was dated June 5, 1918, for a period of five years from that date, and which said lease had expired by its limitations approximately 7 years prior to the making of the lease in controversy, and as to which the then plaintiff was tendered an affidavit of expiration by reason of nondevelopment and nonproduction by a person acknowledged by the then plaintiff to be familiar with the land involved and all facts concerning it, and a reliable person, and which affidavit was by plaintiff rejected."

If the trial court's finding of fact as to the merchantability of defendant's title to the 80-acre tract is correct, then this appeal is without merit, and no other questions need be considered. We will therefore pass on that proposition.

In the escrow contract defining the rights of the parties, it was provided: "Lessors agree to furnish and lessees agree to accept good merchantable title." The contract further provided that after examination of title, lessors should have ten days within which to meet any requirements. The examiner's opinion required a release of the oil and gas lease covering a portion of the land. Such release was not furnished within ten-day period, but, instead, a "nondevelopment affidavit" was tendered and rejected. Were the terms of the contract met by the lessor?

The lease under consideration is that form well known in the oil districts of Oklahoma as the "Producers' 88—Special", and is of the "unless" type. It contains the following provision:

"It is agreed that this lease shall remain in full force and effect for a term of five years from this date, and as long thereafter as oil and gas, or either of them, is produced from said land by the lessee."

The lease was executed the 5th day of June, 1918, so that by its terms, providing the annual rentals in lieu of development were paid, in the absence of the production of oil or gas thereunder, it terminated on the 4th day of June, 1923. The question for decision is whether or not such a lease, in 1930, constituted such a cloud upon the title as to prevent its being good and merchantable.

In Pearce v. Freeman, 122 Okla. 285, 254 P. 719, this court defined a merchantable title in these words:

"A merchantable title is synonymous with a perfect title or a marketable title."

And in Campbell v. Harsh, 31 Okla. 436, 122 P. 127, we said:

"A perfect title is one free from litigation, palpable defects and grave doubts and consists of both legal and equitable title fairly deducible of record."

To the same effect is our holding in Satterthwaite v. Van Dissen, 99 Okla. 233, 226 P. 583, and also Jennings et al. v. New York Petroleum Royalty Corp., 169 Okla. 528, 44 P. (2d) 762.

The abstract tendered by the defendant and examined by plaintiff's attorney disclosed an oil and gas lease under which, so far as the records indicated, the lessee might be claiming some present rights. There was nothing on record, as disclosed by the abstract, from which it could have been ascertained whether or not oil and gas had

been produced upon the land under the terms of the lease. Again, so far as the record showed, the lessee might nave been in possession of an unrecorded extension agreement, perfectly valid as between the lessor and the lessee. The lessee could well have been upon the land, claiming rights under the lease. Any number of situations can be thought of under which the lessee might have claimed present rights under the lease.

Defendant contends that after the expiration of the stated term of such a lease, the presumption exists that the lessee makes no claims thereunder. We think the presumption is to the contrary. Chapter 248, sec. 1, S. L. 1915, sec. 10935, O. S. 1931, makes it the duty of a lessee of a forfeited lease to execute and deliver a release thereof within 60 days after forfeiture. In Dixon v. McCann, 87 Okla. 109, 206 P. 597, it is held that this section is applicable to oil and gas leases. While a forfeiture is not involved in the instant case, we believe the act cited is a recognition of the duty of the lessee of an expired lease to execute a release thereof. No release having been executed it may well be presumed by a third party that the lessee has not executed a release because he yet claims rights thereunder.

In Dixon v. McCann, supra, this court, in referring to the statute cited, said:

"The reason for the statute is apparent for the reason that an oil and gas lease that is unreleased is a cloud upon the title. We think the reason is very similar to cases regarding releases of mortgages upon real estate. Numerous states together with our own have a statute providing for penalties for failure to release."

A similar Montana statute was under consideration in Steven et al. v. Potlatch Oil & Refining Co., 260 P. 119, in which case the Montana court said:

"The lease, uncanceled upon the record, was a cloud upon the title, which the lessors desired to remove, and if the lease had come to an end it was their right to have the lessee cancel it of record."

And in Elliott v. Crystal Springs Oil Co., 187 P. 692, and Caylor v. Bankers' Oil Co., 203 P. 735, the Supreme Court of Kansas refers to an unreleased lease of record after forfeiture or termination as a cloud on the title.

The reports of this court, and of the courts of last resort of all oil producing states, are replete with records of litigation over the rights of both lessor and lessee under leases claimed to have been forfeited or terminated. With the knowledge of this fact and of the possibilities which may arise from assuming too much which does not exist, together with the clear expressions of this court and other courts to the effect that an unreleased lease, such as that under consideration, constitutes a cloud upon the lessor's title, we cannot say that the title is one free from litigation, papable defects, and grave doubts, and thus a "good and merchantable" title.

But defendant asserts that if the unreleased lease constitutes such a cloud upon the title as to make it unmerchantable, she complied with her contract by tendering within time an affidavit made by a reliable person well familiar with the land and all facts concerning it, that the lease had expired under its terms, and that there had been no development on or production from said lease or said land. We cannot agree with defendant. It is common knowledge that such affidavits, called "affidavits of nondevelopment", are often resorted to in this state where the lessee cannot be located and little question of his claims exists, but we know of no holding of this or any other court to the effect that such affidavit takes the place of a duly executed release when same can be procured. Such affidavits are not entitled to record and could help the showing of the record title as disclosed by the abstract not at all. The escrow contract in this case contemplated a clear record title. We cannot hold that ex parte affidavits or other extraneous evidence make a title merchantable which the record shows to be clouded.

In Ammerman et al. v. Karnouski et al., 109 Okla. 156, 234 P. 774, this court held:

"Clear title of record connotes freedom from apparent defects, grave doubts, and litigious uncertainties, and is such title as a reasonably prudent person, with full knowledge, would accept. A title dependent for its validity on extraneous evidence, ex parte affidavits, or written guaranties against the results of litigation is not clear title of record, and is not such title as equity will require a purchaser to accept."

And in Campbell v. Harsh, supra, the rule is stated:

"A purchaser under a contract to make a perfect title is not required to resort to evidence dehors the record. It is not sufficient that the title tendered is capable of being made good by the production of affidavits or other oral testimony. It must be good of record. And where specific performance is granted of a contract upon the

tender of an abstract capable of being made good by the production of affidavits or other oral testimony only, held, that the purchaser should not have been required to accept such title, and that the court erred in granting specific performance."

Defendant further urges that the acts of the title examiner for plaintiff, in writing to the lessee, requesting a release of the lease, constitutes a waiver of plaintiff's right to complain that no release was furnished. The trial court specifically held that the examiner was acting on behalf of defendant in so doing, and since the case-made does not contain all of the evidence offered in the case, we cannot say that there is no evidence to support this finding. On the contrary, such evidence as appears in the record sustains the finding of the trial court. We will not disturb it. Wat-tah-nohzhe v. Moore, 36 Okla. 631, 129 P. 877; Anderson v. Gunther City Coke, Coal & Mining Co., 139 Okla. 102, 281 P. 982; Western Union Telegraph Co. v. Slife, 120 Okla. 285, 251 P. 48; Redd v. Warehime, 166 Okla. 128, 26 P. (2d) 142.

Having held that the defendant did not comply with her contract, it follows that the plaintiff was entitled to the judgment rendered. All other questions presented by the briefs become immaterial.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys W. K. Zachry and J. C. Stone in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Zachry and approved by Mr. Stone, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.