**Martin ZEHNER, Appellee,**

**v.**

**POST OAK OIL COMPANY, a corporation, Appellant.**

**No. 53861.**

Court of Appeals of Oklahoma, Division 2.

June 30, 1981.

Rehearing Denied Sept. 30, 1981.

Certiorari Denied Nov. 23, 1981.

Released for Publication by Order of Court of Appeals Jan. 21, 1982.

[redacted]

Jim Neil Harkins, Holcomb, Holcomb & Harkins, Buffalo, for appellee.

Keith Drum, Drum & Loepp, Inc., Beaver, for appellant.

BOYDSTON, Judge.

Appeal is taken from a jury verdict awarding plaintiff $6,400 actual and $17,900 punitive damages against defendant oil company which had refused to release four oil and gas leases. Suit was for slander of title. Defendant procured leases while land was being partitioned from a cotenant who was outbid by plaintiff· at auction.

I

The operative facts are very nearly undisputed. Elmer Zehner (Plaintiff) was the successful bidder at a partition auction involving 640 acres of land in Harper County, Oklahoma on July 23, 1974. The land had been the subject of litigation since 1971. The court rendered judgment settling cotenancy ownership on April 12, 1973, wherein Alfred Vierheller was determined to be a principal owner. On June 1, 1973, Post Oak Oil Co. (Defendant) through its agent, Cecil Job, obtained four oil and gas leases from Vierheller.

In early July, 1973, one of the attorneys in the partition suit informed Cecil Job the land was the subject of litigation. Job in turn advised the president and owner of defendant oil company, George Mothershed (Mothershed), that "a mistake had been made." Mothershed tried to stop payment on the draft which had been issued to purchase the leases. When this proved to be unsuccessful, a letter agreement was entered into between Vierheller and Defendant on July 11, 1973, wherein they agreed the leases would not be recorded unless Vierheller was the successful bidder for the property. It was also agreed Defendant would be reimbursed for the lease bonus in the event Vierheller was outbid. In spite of this agreement, the leases were filed of record by Defendant on January 25, 1974.

On July 23, 1974, Plaintiff became the successful bidder and the sale was confirmed on August 29, 1974. A few days later, Plaintiff was offered $35 per acre ($22,400) for an oil and gas lease by Dwight D. Davis (D. Davis). Plaintiff consulted with his attorney, Marcus Holcomb, who, in Plaintiff's presence, then called Defendant and informed Mothershed of the $35 offer and requested a release. Mothershed informed the attorney Plaintiff had bought the tract with notice of Defendant's leases, insisted they were valid and refused to file a release. The $35 D. Davis offer was eventually withdrawn.

On December 31, 1974, Defendant assigned the leases to Herbert G. Davis, Inc. They were filed of record on January 13, 1975.

Mothershed responded to a demand letter from Plaintiff's attorney by again refusing to release and continuing to defend the validity of the leases by proclaiming the rule of caveat emptor applied to Plaintiff's purchase of the land.

Suit was filed against Defendant and its assignee, Herbert G. Davis, Inc., on March 21, 1975. Defendant Davis capitulated immediately and settled his part by agreeing to lease the same land for $25 per acre ($16,000), of which Plaintiff paid his attorney 25 percent. This settlement was the foundation used to establish damages. Plaintiff proved he had lost a chance to lease for $35 per acre and that he eventually procured a lease for $25 per acre—a net $10 per acre loss equalling $6,400. This was the exact amount of actual damages awarded by the jury, though $17,900 in punitive damages was also awarded.

Prior to trial, Defendant filed a motion in limine to exclude testimony that Plaintiff had been offered a $35 per acre bonus. Trial judge partly granted the motion, ruling Plaintiff could not testify to the offer itself, but could testify to the fact he had been approached by offeree (D. Davis) and "to the fact of his having had an opportunity to lease it."

The issues raised on appeal are:

(1) the leases, conceded to be legally extinguished by partition sale, could not be considered a "cloud" as a matter of law;

(2) it was error to permit testimony by Plaintiff he was offered a $35 per acre bonus in order to prove damages;

(3) it was error to permit testimony of offer by Plaintiff because it is hearsay; and

(4) it was error to submit issue of punitive damages to jury.

1. *Hart v. Pharaoh*, Okl., 359 P.2d 1074 (1961), held a purchaser of realty from a party to a pending partition action is bound by the judgment rendered against the grantor—purchaser takes no greater rights than his grantor.

2. Title 41 O.S.1971 § 40. *See Dixon v. McCann*, 87 Okl. 109, 206 P. 597 (1922), which commented:

On cross-appeal, Plaintiff complains trial court refused to award attorney fee based upon the oppressive conduct of Defendant.

## II

■ Defendant argues in its first proposition that the leases are not legitimate "clouds" on Plaintiff's title, therefore the action for slander of title cannot be maintained. Defendant concedes the leases were cancelled by the partition sale as a matter of law,[1] therefore anyone who found them of record should have merely ignored them. We find this argument to be without merit. In all successful slander of title suits the "cloud" or slander must be legally groundless as a matter of law. In this case, Plaintiff and others informed Defendant before and after it had filed the leases of record the instruments were ineffective unless its grantors successfully bid on the land at auction.

■ The right to require cancelled or invalid/forfeited oil and gas leases to be released of record is so important in Oklahoma that the legislature has made it a misdemeanor to wrongfully refuse to release.[2] The supreme court has set forth the elements required to prove slander of title in *New England Oil & Pipe Line Co. v. Rogers*, 154 Okl. 285, 7 P.2d 638 (1932). They are:

First, the publication of the words; second, that they were false; third, that the publication was malicious; fourth, that he sustained special damages on account thereof; and fifth, that he owned or possessed an interest in the property slandered.

■ The court went on to state in a slander of title action it is not necessary to prove "ill will, hatred, etc., toward the own-

Our statute was passed to remedy just this evil. It was to prevent a lessee who has recorded an oil and gas lease, and although it has expired, been abandoned, or is subject to forfeiture, still if not released is a cloud upon the landlord's title, from using this weapon to extort from the landowner money, and using this cloud on his title to prevent the landowner from executing a new lease.

er of the land in order to establish a prima facie case of malice." We find Plaintiff established a prima facie case, and further find that there were sufficient facts from which the jury could find Defendant was motivated by malice. The chain of events, particularly Defendant's correspondence, portrayed Defendant as carrying out a deliberate, calculated scheme to force Plaintiff to either lease to Defendant or to no one, or require Plaintiff to pay for an expensive quiet title suit to clear his title of the forfeited leases.[3]

### III

Defendant complains Plaintiff should not have been permitted to testify he was offered $35 per acre by a prospective lessee. This issue was raised by motion in limine prior to trial. We agree this ordinarily is an improper way to prove value. We hold the trial court's ruling limiting proof to the fact of an opportunity to lease was not error. In other words, it was permissible to allow Plaintiff to prove the minerals were "leasable," therefore having an established marketability. In this instance, however, no objection nor motion to strike was made during the course of trial by Defendant to exclude the evidence that Plaintiff lost the chance to lease for $35.

Title 12 O.S.Supp. 1979 § 2104 provides: A. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and;

1. If the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context;

The highest office of orders in limine[4] is to settle in advance anticipated evidentiary problems, streamline and facilitate trials and to prevent the asking of certain improper questions in the presence of the jury. As such, the order is not conclusive. A ruling on the threshold of trial does not preclude the court changing its ruling based on other developments during trial. Nor does such a ruling relieve a party from the responsibility of making objections, raising motions to strike or making formal offers of proof during the course of trial. In this case, we find Defendant waived its evidentiary objections by failing to make timely objections and motions to strike during the course of trial.

### IV

Finally, Defendant complains there was insufficient evidence to submit the issue of punitive damages to the jury. In this respect, we observe Defendant knew the land was in partition before recording the leases; it knew the legal infirmity of its position as evidenced by the agreement with its lessor for reimbursement should lessor not be high bidder; it had notice that Plaintiff had a chance to lease for $35 per acre; and, at all times it acted deliberately and apparently with full intention not to release the leases. On the contrary, after the telephone call from Plaintiff's attorney and letter demanding release, Defendant further complicated Plaintiff's record title by assigning the leases to a third party and declaring "Post Oak therefore has no present interest to release nor will it request its assigns to release its interest in said property." We hold these facts are sufficient to make a prima facie showing that Defendant acted with actual malice,[5]

---

3. *See Ward v. Midwest & Gulf Co.*, 97 Okl. 252, 223 P. 170 (1924) and *Smith v. Autry*, 69 Okl. 28, 169 P. 623 (1918).

4. The Oklahoma Court of Criminal Appeals has addressed this issue in *Teegarden v. State*, Okl. Cr., 563 P.2d 660 (1977) by stating:
   Ruling on motion in limine is merely advisory and not conclusive, and ... in order to properly preserve objections to ... evidence ...

objection must be made at time evidence is sought to be introduced ... [t]hereby giving trial court an opportunity to make a final ruling.

5. In *Sunray DX Oil Co. v. Brown*, Okl., 477 P.2d 67 (1970), the supreme court held:
   Punitive damages are not limited to cases where there is direct evidence of fraud, malice, or gross negligence and such damages may be allowed when there is such reckless-

and trial court did not err in submitting the issue to the jury.[6]

## V

Plaintiff cross-appeals claiming trial court should have awarded attorney fees because of Defendant's oppressive behavior, citing *City National Bank & Trust Co. v. Owens*, Okl., 565 P.2d 4 (1977). In this respect we note the jury has already found Defendant guilty of "oppressive behavior" and assigned a value to that conduct in the form of a $17,900 punitive damages award. We hold where there is otherwise no statutory authority for the award of attorney fees and the issue of punitive damages is submitted to the jury for its determination, regardless of the outcome, application of the *City National* rule is inappropriate.

Judgment of trial court is therefore affirmed. Costs of appeal are taxed against Defendant. Judgment is hereby rendered on the supersedeas appeal bond in favor of Plaintiff for amount of judgment, interest and costs.

BACON, P. J., and BRIGHTMIRE, J., concur.

---

ness and wanton disregard of another's right that malice and evil intent may be inferred.

6. For comprehensive summary, *see* Tadley, Evidence, 3 Okla. City U.L.Rev. 262 (1978) and Kuntz, Liability for Clouding Title to Oil and Gas Interests, 10 Okla.L.Rev. 125 (1957).